## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROSA CRUZ, | ) | |
| | ) | **11 CV 1488** |
| Plaintiff, | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| TARGET CORPORATION, d/b/a | ) | |
| TARGET STORES, SUPER TARGET, | ) | |
| | ) | **November 15, 2011** |
| Defendant. | ) | |

### MEMORANDUM OPINION and ORDER

In this diversity suit Rosa Cruz alleges that on the last day of 2010, she fell and injured herself while shopping at the Target store located at 2656 North Elston in Chicago, Illinois. Her original complaint presented a single claim against Target Corporation ("Target") for negligence. Currently before the court is Cruz's motion to amend the complaint pursuant to Federal Rule of Procedure 15(a) to add two additional claims—one for loss of consortium on behalf of Cruz's husband, Fernando Cruz, and one for loss of parental consortium on behalf of their minor son. For the following reasons, the motion is granted to the extent that Cruz seeks to add a claim based on her husband's alleged loss of consortium, but the motion is denied to the extent that she seeks to add a claim based on her minor son's alleged loss of parental consortium:

### Background

Cruz filed her original complaint in the Circuit Court of Cook County on January 27, 2011. (R. 1, Notice of Removal, Ex. 2.) Cruz alleged that on December 31, 2010, she was

shopping in the Elston Street Target store when she slipped, slid, and/or fell on "some type of liquid, and/or slippery substance, and/or debris present" on the floor.  (Id. Ex. 2 ¶¶ 3-4, 9.) She further alleged that Target's negligence in operating and maintaining the store caused her fall and the resulting injuries.  (Id. Ex. 2 ¶¶ 8-9.)  On March 2, 2011, Target removed the case to this court on diversity grounds.  (R. 1, Notice of Removal ¶ 1.)  A month later, Cruz moved to remand the case back to state court, but the assigned district judge entered and continued the motion[1] until after the parties could discuss settlement.  (R. 8; R. 10.)

The parties' settlement discussions were unsuccessful, and on September 22, 2011, Cruz filed the current motion seeking to add to the single negligence claim two counts for injuries allegedly suffered by Fernando and their minor son, respectively.  (R. 21, Mot. to Amend ¶ 10.)  In proposed count two, Cruz alleges that Fernando Cruz suffered lost income and loss of consortium based on his wife's "severe and disabling internal and external permanent injuries."  (Id. Ex. 1, Proposed Am. Compl. ¶¶ 20-21.)  In proposed count three, Cruz alleges that her minor son—who has Down's Syndrome—has suffered "the loss of parental care and companionship of his injured mother as well as his right to enjoy a relationship with her."  (Id. ¶¶ 29-30.)  A week after Cruz filed the current motion to amend, the parties consented to the jurisdiction of this court.  *See* 28 U.S.C. § 636(c); (R. 26).

---

[1]  The court denied this motion as moot on October 11, 2011.  (R. 30.)

### Analysis

Target argues that Cruz's motion to amend her complaint should be denied to the extent that she seeks to add a claim for her son's alleged loss of parental consortium because Illinois law does not recognize a right of a minor child to pursue a claim for loss of consortium based on a parent's non-fatal injuries. It is well-established that this court may deny a motion for leave to amend under Rule 15(a) where amending the pleading would be futile. *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). If a proposed amended complaint would not withstand a motion to dismiss pursuant to Rule 12(b)(6), the amendment is viewed as being futile. *See Smart v. Local 702 Int'l Broth. of Elec. Workers*, 562 F.3d 798, 811 (7th Cir. 2009); *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008).

Because this court is sitting in diversity over claims arising under Illinois law, under the mandate set forth in *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), this court "must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." *State Farm Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). Here both parties agree that the Supreme Court of Illinois has not spoken directly on the question of whether a minor child has a cause of action for loss of consortium based on his parent's non-fatal injuries. Accordingly, it is this court's task to predict how that court would resolve the question. *See id.* In making that prediction, this court must give "great weight to the holdings of the state's intermediate appellate courts and

3

ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). In other words, this court must adopt the state appellate court's view of the question "unless there are clear, and persuasive, reasons not to do so." *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003); *see also State Farm*, 275 F.3d at 669 (noting that this court should not disregard appellate state court rulings "unless there are persuasive indications that the state's highest court would decide the case differently").

Here, although the Illinois Supreme Court has not directly resolved whether a minor child has a claim for loss of consortium where a parent sustains non-fatal injuries negligently caused by the defendant, two cases are particularly instructive. In *Dralle v. Ruder*, 124 Ill.2d 61, 68-71 (1988), the Illinois Supreme Court refused to recognize a parent's right to recover for loss of a child's companionship and society where an alleged tortfeasor injures the child. The *Dralle* court cited a number of policy reasons in support of its ruling, including the need to avoid the "considerable enlargement of liability," the difficulty and sensitivity of assessing damages, and the likelihood of duplicative recoveries for the child and his family members. *Id.* at 69-70. Of particular importance, the *Dralle* court noted in dicta that the Illinois "appellate court has consistently refused to recognize the converse claim—actions brought by children for loss of society and companionship resulting from nonfatal injuries to their parents." *Id.* at 65.

4

Fifteen years later, in *Vitro v. Mihelcic*, 209 Ill.2d 76, 92 (2004), the Illinois Supreme Court reconfirmed its holding in *Dralle*, declining to revisit the rule that a parent cannot recover for loss of consortium resulting from a child's nonfatal injuries. Although the *Vitro* court disagreed with many of the policy reasons cited by the *Dralle* court as supporting the rule, it concluded that those disagreements did not amount to the kind of "compelling reasons" required to justify a departure from *stare decisis*. *Id.* at 82, 87-88. The court concluded that although some of the reasoning in *Dralle* is flawed, one implicit reason justifies the rule's continuation: that "it is the legislature which should decide whether this new cause of action should be created." *Id.* at 88. The court noted that the General Assembly is better equipped to "'gather and synthesize data pertinent to the issue . . . to solicit information and advice from the many public and private organizations that may be impacted . . . [and] to weigh and properly balance the many competing societal, economic, and policy considerations involved.'" *Id.* at 88-89 (quoting *Wakulich v. Mraz*, 203 Ill.2d 223, 232 (2003)). Because it concluded that "boundary-setting often is more appropriately left to the legislative branch," it refused to expand negligence liability to incorporate a parent's claim for loss of consortium based on non-fatal injuries suffered by a child. *Id.* at 90.

Even though the rule set forth in *Dralle* and *Vitro* applies to a parent's cause of action based on a child's injury instead of the converse—and thus does not directly resolve the question posed here—a long line of cases from the Illinois Appellate Court have held firm to the rule against allowing minor children to recover under a loss-of-consortium theory in

situations where a parent suffers non-fatal injuries as a result of a defendant's negligence. The first case in the line is remarkably similar to this one. In *Koskela v. Martin*, 91 Ill.App.3d 568, 569 (1st Dist. 1980), an autistic child brought a loss of consortium claim against the driver and owner of a garbage truck that injured her father in a collision. Although the court expressed sympathy to the child's circumstances, it concluded that "the determination of whether a child should be granted this cause of action is one of legislatively determined public policy." *Id.* at 571. Because the Illinois legislature had provided no statutory basis for the child's loss of parental consortium claim, the appellate court affirmed the trial court's dismissal of the claim. *Id.* at 572. In the years that followed, both before and after *Dralle* and *Vitro*, the Illinois Appellate Courts have held firm to this position. *See, e.g., McNeil v. Diffenbaugh*, 105 Ill.App.3d 350, 354 (1st Dist. 1982); *Mueller v. Hellrung Constr. Co.*, 107 Ill.App.3d 337, 339 (5th Dist. 1982); *Block v. Pielet Bros. Scrap & Metal, Inc.*, 119 Ill.App.3d 983, 987 (1st Dist. 1983); *Huter v. Ekman*, 137 Ill.App.3d 733, 734-35 (2d Dist. 1985); *Hearn v. Beelman Truck Co.*, 154 Ill.App.3d 1022, 1023-24 (5th Dist. 1987); *Karagiannakos v. Gruber*, 274 Ill.App.3d 155, 158 (1st Dist. 1995); *Hanks v. Cotler*, __ N.E.2d __, 2011 WL 4578603, at *9 (Ill. App. Ct. 1st Dist. Sept. 29, 2011).

Cruz argues that despite the rule's long history, the Illinois Supreme Court would depart from this firm line of appellate court cases if confronted with the claim of a special-needs child. Cruz asserts that a child with special needs is uniquely ill-equipped to deal with the changes that accompany a parent's severe injury. In this case, Cruz argues that her minor

6

son discerns affection through physical interaction, and that Cruz's injuries have prevented her from offering the physical contact to which he is accustomed. (R. 32, Reply at 5.) But even accepting Cruz's characterization of special-needs children as being uniquely harmed by the loss of consortium stemming from a parent's nonfatal injuries, that argument speaks more to the extent of damages than to whether the Illinois Supreme Court would recognize the proposed cause of action in the first place. It does not address the Illinois Appellate Court's conclusion that expanding tort liability to encompass a child's cause of action for loss of consortium is a decision that belongs in the hands of the state legislature. *See, e.g., Koskela*, 91 Ill.App.3d at 571; *Block*, 119 Ill.App.3d at 987; *Hearn*, 154 Ill.App.3d at 1025. Indeed, in *Koskela*, the Illinois Appellate Court was confronted with allegations that as a result of the plaintiff's autism, she "was uniquely dependent on her father for personal care and supervision." 91 Ill.App.3d at 569. That circumstance did not factor into the court's decision not to recognize the proposed cause of action. *Id.* at 571.

Cruz also argues that the Illinois Supreme Court would fall in line with what she characterizes as a rising tide of cases from other states that now recognize a claim stemming from child's loss of parental consortium. According to Cruz, when *Koskela* was decided only six states recognized this cause of action, but now 21 states do. (R. 32, Reply at 4.) That is an increase of 350%. (Id.) But Cruz has not persuasively argued that the Illinois Supreme Court will be swayed by what is happening in other jurisdictions, or that it would now side with what Cruz admits is still a minority position. (Id.) More importantly, in

analyzing how the Illinois Supreme Court would resolve an issue of first impression, the Seventh Circuit has not been persuaded by statistics regarding even a majority position in other state courts where the Illinois Appellate Court has taken the opposite position. *See State Farm*, 275 F.3d at 671. Given the Illinois Appellate Court's long and unanimous adherence to the rule that a child cannot bring a loss of consortium claim based on his parents' nonfatal injuries, the statistics Cruz points to do not persuade this court that the Illinois Supreme Court would adopt the position she proposes.

Finally, Cruz argues that the special concurrence in *Dralle*, the dissent in *Vitro*, and what she describes as the growing resistance to the current rule in the appellate courts, all point to the conclusion that the Illinois Supreme Court would recognize the claim she proposes. For example, she points out that in *Karagiannakos*, the Illinois Appellate Court noted that many of the policy reasons supporting *Dralle*, including the supposed risk of multiple recoveries and the difficulty of assessing damages, could be cured by careful jury instructions. *See* 274 Ill.App.3d at 158. In light of those perceived flaws, the *Karagiannakos* court remarked on its "temptation to strike out on our own" to recognize the right to recover for loss of parental consortium to the children of injured parents. *Id.* It nonetheless declined to do so, adhering instead to "the majority view in this country." *Id.* Cruz also points to *Alber v. Illinois Department of Mental Health and Developmental Disabilities*, 786 F.Supp. 1340, 1365 (N.D. Ill. 1992), where Judge Shadur characterized as "cogent and persuasive" the concurrence in *Dralle*, pointing out the "serious flaws" in the policy factors cited by the

8

majority. But Judge Shadur nonetheless concluded that the court was bound to adhere to the Illinois Appellate Court's rule rejecting a child's loss of parental consortium claim. *Id.* at 1366. Despite the repeated critique of *Dralle*'s policy factors, the cases Cruz cites do not undermine the core foundation supporting *Vitro*—that the expansion of liability in the loss-of-consortium arena should be left to the legislature. Given *Vitro*'s holding, coupled with the Illinois Appellate Court's stance that the state legislature should decide whether children of injured parents may recover under a loss-of-consortium theory, this court is unconvinced that the Illinois Supreme Court would create a new cause of action for the loss-of-consortium claim of a special-needs child if confronted with the question today. Accordingly, this court concludes that proposed claim three would not survive a motion to dismiss under Rule 12(b)(6). Because the proposed amendment with respect to that claim would be futile, this court denies Cruz's motion as it pertains to count three. *See Smart*, 562 F.3d at 811.

## Conclusion

For the foregoing reasons, Cruz's motion to amend her complaint pursuant to Rule 15(a) is granted in part and denied in part.  The motion is granted to the extent that Cruz seeks to file a federal complaint adding to her negligence claim a claim based on her husband's alleged loss of consortium.  The motion is denied to the extent that she seeks to add a claim for her minor son's alleged loss of parental consortium.

**ENTER:**


**Young B. Kim**
**United States Magistrate Judge**